**Jeff PRICE et al., Petitioners,**

**v.**

**Hon. C. C. WELLS, Judge of 33rd Judicial District et al., Respondents.**

Court of Appeals of Kentucky.

March 16, 1956.

Rehearing Denied June 15, 1956.

Napier & Napier, C. W. Napier, Jr., Hazard, for petitioners.

Don A. Ward, Hazard, for respondents.

CULLEN, Commissioner.

The petition for an order of mandamus now before us is an outgrowth of litigation that was before this Court on appeal in Price v. Farra, Ky., 258 S.W.2d 460. The controversy there concerned the title to a tract of land lying on Gay's Creek in Perry County. Farra and Little, owning land on the north, claimed that the tract was embraced within their southern boundary line. The Prices, owning land on the south, claimed that the tract was embraced within their northern boundary line. The boundary line in question ran from a ridge on the west of Gay's Creek down a drain and across the creek to a stump, and then up to the top of a ridge on the east side of the creek. There were two drains on the west side of the creek, and the case was practiced on the basis that a determination of which of the two drains constituted the line on the west side of the creek would result in locating the entire boundary line. There was no particular issue about the part of the line on the east side of the creek. The trial court determined that the southern drain constituted the correct boundary west of the creek, and accordingly adjudged title in Farra and Little to the tract in dispute. That judgment was affirmed on the appeal.

The judgment purported to set out a description of the entire line, both west and east of the creek. Some time after the judgment was affirmed, Farra and Little filed a motion in the Perry Circuit Court, asserting that the Prices were encroaching upon the disputed tract on the east side of the creek, and asking for a rule against the Prices to show cause why they were disobeying the judgment. A controversy then arose as to the location of the line east of the creek as purported to be described in the judgment. A petition for an order of mandamus or prohibition was filed in this Court, resulting in an order of this Court directing the circuit court to appoint a surveyor to survey the line east of the creek, "such survey to be made in conformity with the final judgment of the circuit court entered in that action and such other descriptions as may be necessary appearing in the deeds of record in that action." The circuit court thereupon entered an order appointing a surveyor, which order was in substantially the same language as the order of this Court, except that with reference to using deeds in the record it stated that the surveyor "may have the benefit of such other descriptions appearing in the deeds of record in this action as he may deem necessary."

The surveyor went upon the land and surveyed the line east of the creek. He located the line as running south from the stump on the east side of the creek, down the creek to the foot of the ridge at the confluence of Gay's Creek and Spruce Pine Fork, thence up the point of the ridge in a northeastern direction. He reported to the court that he was able to locate the line from the description in the judgment, and he found no necessity to refer to the deeds in the record. The Prices filed exceptions to the report, on the basis that the description in the judgment was ambiguous; reference to the deeds in the record was necessary to locate the line east of the creek; and these deeds all showed clearly that the line went straight up the mountainside in a southeast direction, from the stump to the top of the ridge, and did not go south down the creek to the foot of the ridge and then up the ridge as found by the surveyor.

The exceptions to the surveyor's report were overruled; a motion by the Prices for an order compelling the surveyor to use the deeds in the record also was overruled; and an order was entered that "this case is now stricken from the docket of this court." The order was entered on April 28, 1955.

In August 1955 the Prices filed their petition in this Court, seeking an order of mandamus commanding the circuit judge and the surveyor "to comply with the order of this Court in running the line between the property of these petitioners and that of the said Otie Farra and Malta Little."

The prior order of this Court, directing that the survey be made, followed an oral hearing on the petition of Farra and Little for an order of mandamus or prohibition, by which they had sought to overcome an order of the circuit court which had directed that the line in question be surveyed in accordance with the description contained in the opinion of this Court affirming the original judgment. It was substantially agreed at the hearing that the opinion of this Court did not purport to define the line east of Gay's Creek, and could not be used as the basis for a survey. It was considered, however that the line could be located by a survey using the judgment "and such other descriptions as may be necessary appearing in the deeds of record in that action." It was contemplated, we are certain, that *some* of the deed descriptions would be necessary, because of the ambiguity in the judgment.

The judgment contained *two* descriptions of the line in question. One recited that the line began at the oak stump just above the mouth of Spruce Pine Fork in the dividing line between the lands of William Begley and those of Jesse Begley, "thence running with the dividing line a southeast course up the mountainside to the top of the ridge above the mouth of said Spruce Pine Branch or Fork, intersecting with the line of a thousand acre survey made by Jesse Begley May 10, 1848." This description is the same as that in the title papers of Farra and Little. The other description in the judgment defines the line as "leaving the

oak stump * * * and running up the point between Spruce Pine Fork and Gay's Creek to the top of the hill to a point between Spruce Pine Fork Lick Branch and Gay's Creek; thence running up the ridge between Gay's Creek and Lick Branch to the 7th corner of the Jesse Begley survey." The description in the title papers of the Prices defines the line as running from the stump "square up the hill to the top of the mountain thence with the ridge."

The surveyor admittedly used only the second description in the judgment, which defines the line as "running up the point."

■ As the case has developed, it seems that the proposed solution of the problem embodied in our prior order is not workable because the question as to what constitutes the correct description has proved to be one not capable of being decided by the surveyor alone. Nor is the question one appropriate for decision by this Court in a mandamus proceeding. On the other hand, the previous proceedings in the case have placed it in a state of procedural confusion as concerns what action the circuit court may or should take. It is our opinion that the case should be redocketed in the circuit court and appropriate proceedings taken to amend the judgment so as to define accurately the line east of Gay's Creek. Any party dissatisfied with the amended judgment then will have the opportunity to appeal from the amended judgment.

■ In the proceedings to amend the judgment, the title papers already in the record will of course be considered, and the court may receive other evidence in its discretion.

An order will issue directing the respondent judge to redocket the case of Farra and Little v. Price, and to conduct further proceedings in conformity with this opinion.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge.

I am unable to agree with the majority opinion. It is my feeling that the petition-ers have taken the procedure outlined in the opinion in an effort to obtain an appeal by subterfuge after the proper time for appeal has elapsed. The question is whether the Chancellor followed the order of this Court with reference to having the survey made. Petitioners took the appropriate means to raise the question in the lower court. They filed exceptions to the surveyor's report, which were overruled. Their motion to compel the surveyor to use the deeds in the record was also overruled. These two rulings of the Chancellor squarely presented the issue. Following these rulings, an order was entered striking the case from the docket. An appeal would have presented the issue for review.

An order striking a case from the docket is a final order, which is appealable. In Aikman v. South, Ky., 97 S.W. 4, 5, "filed away", "dismissed", "docketed", and "'stricken from the docket'" were held to mean the same, in that the action had been finally concluded. The Court said:

"It is a final order, however worded, when it may be gathered from the language of it that the court intended to dismiss the action and the parties from further consideration of the court."

See also Phillips v. Arnett, 164 Ky. 426, 175 S.W. 660, wherein the Aikman opinion was approved.

The order striking the case from the docket was a final order from which the petitioners should have appealed. In this way, the rulings of the Chancellor could have been reviewed. This order was entered on April 28, 1955. Apparently, petitioners did not decide to take any further action until their petition herein was filed in August 1955, at which time it was too late to appeal; hence, this effort to circumvent the failure to appeal within the proper time.

There is another very compelling reason why the relief sought by the petitioners should be denied. The successful parties in the action stricken from the docket were not made parties to this procedure and, thus, have been denied a right to be heard on

whether the relief sought here should be granted.

I agree with the majority opinion wherein it holds that this is not an appropriate question for decision by this Court in a mandamus proceeding against a judge of the circuit court, which is a third reason why the petition should be dismissed.

For these reasons, the majority opinion is in error in sustaining the petition.